IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DRAKE P., a minor, by and through his parent, MARIA P.; and MARIA P., an adult, individually and on her own behalf,** | : : : : | **CIVIL ACTION** |
| Plaintiffs, | : : | NO. 10-4519 |
| v. | : : | |
| **COUNCIL ROCK SCHOOL DISTRICT,** | : : | |
| Defendant. | : | |

**DuBOIS, J.**  JUNE 2, 2011

<u>M E M O R A N D U M</u>

**I. INTRODUCTION**

In this case, an 11-year-old child with autism, Drake P. ("Drake"), alleges that he was denied a Free Appropriate Public Education ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et</u> <u>seq.</u>, and suffered discrimination because of his disability under Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794. Drake and his mother, Maria P. ("Maria"), seek tuition reimbursement from Council Rock School District ("Council Rock" or "the district") for a six-month period during which, they allege, Drake would have been unable to transition back to public school because his family's house had recently burned down, and a few days later his father passed away.

Presently before the court is plaintiffs' Motion for Judgment on the Administrative Record. While the facts of this case are tragic, for the reasons that follow, the Court concludes that there is no legal theory on which plaintiffs can prevail. Thus, plaintiffs' motion is denied.

## II. BACKGROUND

Drake was diagnosed with autism in March 2003. (N.T. 197.) In 2007, when he was 7 years old, Drake's family moved from New Jersey into a home in the Council Rock School District in Pennsylvania. (Id. at 197-99.) The primary motivation for the move was to give Drake access to the programming offered by Council Rock, which his parents felt would better serve his needs. (Id. at 198-99.) Drake was initially enrolled at Richboro Elementary School ("Richboro") for a summer program, then moved to Goodnoe Elementary School ("Goodnoe") for the beginning of the 2007-08 school year. (Id. at 199-202.)

As the school year progressed, Maria came to believe that the program at Goodnoe was not meeting Drake's needs. (Id. at 206.) She requested he be transferred back to Richboro; the district complied. (Id.) By the end of the year, however, Maria remained dissatisfied with the district's program for Drake. (Id. at 229.) As a result, Drake's parents removed him from public school in July 2008 and enrolled him at the Comprehensive Learning Center ("CLC") in Southampton, PA, a private school that serves children with autism. (Id. at 241.)

According to Maria, Drake began to flourish at CLC. (Id. at 243-45.) Then, in one three-day period in December 2008, Drake suffered two tragedies. First, on December 13, 2008, the family's house "completely burned down" while Drake stood outside in his pajamas and bare feet. (Id. at 255.) Then, just two days later, as the family began to look for new permanent housing, Drake's father passed away. (Id.) Maria moved her family to a nearby townhouse while their house was rebuilt, and she made sure Drake did not miss any school. (Id. at 256.) There is no evidence in the record that she contacted the district about re-enrolling Drake in public schools at that time. To the contrary, Maria believed the program at CLC was working well for

Drake, (id. at 243-45), and was of the opinion that Drake's "need for consistency" would have made transferring back to Council Rock difficult for him. (Id. at 282.)

On April 1, 2009, plaintiffs, through counsel, notified the district of their intent to seek a due process hearing under the IDEA and Section 504, both of which protect the rights of special education students to obtain a FAPE from their public schools. (Administrative R., Ex. 17.) Plaintiffs alleged that the district had failed to offer Drake a FAPE for the 2008-09 school year and sought, inter alia, reimbursement for the cost of tuition at CLC for the entire academic year. (Id.) A hearing officer conducted the due process hearing over the course of six days between September 2009 and May 2010. (See id., Exs. 5-10.) On June 9, 2010, the hearing officer issued a 20-page opinion in which he ruled that the district had offered Drake a FAPE for the 2008-09 school year and therefore did not have to pay the cost of Drake's tuition at CLC. (Id., Ex. 2.)

Plaintiffs appealed the hearing officer's decision by filing their Complaint in this action on September 7, 2010. Before this Court, plaintiffs seek only reimbursement for Drake's CLC tuition for the period from early January 2009 – immediately following the twin tragedies – to the end of the school year. Plaintiffs allege that even if the district offered Drake a FAPE in July 2008, that offer no longer constituted a FAPE for the second half of the school year because Drake could not have transitioned back into the public school system after the tragic events of December 2008.

The parties agreed that the case could be decided by motion for judgment on the administrative record, with no further discovery. (See Order of Nov. 29, 2010 at 1 (Doc. No. 9)).) The instant motion is fully briefed and thus ripe for review.

## III. LEGAL STANDARD

"Congress enacted IDEA in 1970 to ensure that all children with disabilities are provided a free appropriate public education which emphasizes special education and related services designed to meet their unique needs [and] to assure that the rights of [such] children and their parents or guardians are protected." Forest Grove Sch. Dist. v. T.A., 129 S. Ct. 2484, 2491 (2009) (internal quotation marks and citation omitted). The IDEA defines a FAPE as "special education and related services that –

> (A) have been provided at public expense, under public supervision and direction, and without charge;
> (B) meet the standards of the State educational agency;
> (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and
> (D) are provided in conformity with the individualized education program required under section 1414(d) of this title.

20 U.S.C. § 1401(9). The main vehicle through which a school offers a special education student a FAPE is the individualized education program ("IEP"). See 20 U.S.C. § 1414(d). An IEP "must be reasonably calculated to enable the child to receive meaningful educational benefits in light of the student's intellectual potential." Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel P.S., 381 F.3d 194, 198 (3d Cir. 2004) (internal quotation marks and citation omitted).

Section 504 provides, in pertinent part, that a disabled person shall not "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a). A student alleging that a school or district violated Section 504 must prove "(1) he is 'disabled' as defined by the Act; (2) he is 'otherwise qualified' to participate in school activities; (3) the school or the board of education receives federal financial assistance; and (4) he

was excluded from participation in, denied the benefits of, or subject to discrimination at, the school." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 253 (3d Cir. 1999). The "substantive requirements" of Section 504 in the education context "are equivalent" to the requirements of the IDEA. Molly L. ex rel. B.L. v. Lower Merion Sch. Dist., 194 F. Supp. 2d 422, 426 (E.D. Pa. 2002). There is no dispute that Drake is disabled and qualified to participate in school activities, and the district receives federal funding. Thus, because the same analysis applies to plaintiffs' IDEA and Section 504 claims, the Court will analyze the claims under only the IDEA.

Finally, in reviewing an IDEA case on appeal from an administrative decision, the Court must give "due weight" to the decision of the hearing officer. S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 269 (3d Cir. 2003). This has been referred to as "modified de novo review." Id. at 270. Given the absence of additional evidence that was not before the hearing officer, the Court must defer to the hearing officer's factual findings "unless it can point to contrary nontestimonial extrinsic evidence on the record" that rebuts those findings. Id.[1]

## IV. DISCUSSION

In opposing plaintiffs' motion, the district advances two arguments. First, the district contends that the Court lacks jurisdiction over the instant case because plaintiffs failed to present their current claim to the hearing officer and thus failed to exhaust their administrative remedies under the IDEA. Second, the district asserts that, even if the Court has jurisdiction over the case, plaintiffs' motion should be denied on its merits. The Court concludes that plaintiffs have satisfied the IDEA's exhaustion requirement but are not entitled to reimbursement.

---

[1] Under the IDEA, parties have the option of presenting additional evidence to the district court. 20 U.S.C. § 1415(i)(2)(C)(ii). The parties have not availed themselves of that option in this case.

A. Exhaustion

The IDEA requires a party to exhaust administrative procedures before seeking relief in federal court. See 20 U.S.C. § 1415(i)(2); Honig v. Doe, 484 U.S. 305, 326-27 (1988) ("[J]udicial review is normally not available under [§ 1415(i)(2)] until all administrative proceedings are completed. . . ."). The Third Circuit has stated that a challenge to an IDEA complaint on exhaustion grounds is "jurisdictional in nature." W.B. v. Matula, 67 F.3d 484, 493 (3d Cir. 1995), overruled on other grounds by A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 793 (3d Cir. 2007).

In Pennsylvania, exhausting administrative remedies consists of participating in a due process hearing. See 22 Pa. Code § 14.162. The decision of the hearing officer can then be appealed directly to a federal district court. Breanne C. v. S. York Cty. Sch. Dist., 732 F. Supp. 2d 474, 482-83 (M.D. Pa. 2010).[2] Further, before bringing suit under Section 504 "seeking relief that is also available under the IDEA," a party must exhaust administrative remedies to the same extent as required under the IDEA. See 20 U.S.C. § 1415(l); 34 C.F.R. § 300.516(e).

In this case, the district contends that plaintiffs failed to exhaust their administrative remedies because they did not place before the hearing officer the specific issue of whether the district failed to offer Drake a FAPE during the second half of the school year, after his father died and his house burned down. Plaintiffs contend that their claim for tuition reimbursement for the 2008-09 school year included the "sub-issue" of Drake's ability to transition back to public school following those tragic events.

---

[2] Pennsylvania previously had a two-tiered administrative review system for IDEA claims, wherein hearing officers' decisions had to first be appealed to the Pennsylvania Special Education Appeals Panel before an appeal could be taken to federal court. Breanne C., 732 F. Supp. 2d at 482. That system was replaced with the current one-tiered system in 2008. Id. at 482-83.

There is some force to the district's argument. One of the primary reasons for the exhaustion requirement in the IDEA is to allow for the "development of a complete factual record." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 112 (2d Cir. 2004). Had plaintiffs identified for the hearing officer at the outset that they wished to raise a separate claim based solely on the second half of the school year, it might have led to a more complete factual record. For example, the district might have presented more evidence about why it did not offer Drake a new IEP after the tragic events of December 2008.

Nonetheless, the Court concludes that plaintiffs have exhausted their claim. First, as plaintiffs assert, the claim that Drake was denied a FAPE for part of the 2008-09 school year is necessarily subsumed within the claim that Drake was denied a FAPE for the entire year. More importantly, there was significant discussion at the hearing of the impact on Drake of transitioning back to public school after the death of his father and the destruction of his house. (See, e.g., N.T. 16-17, 22, 50-51, 68.) This substantial factual development of the claim renders it fit for judicial review. See Myslow v. New Milford Sch. Dist., No. 03-496, 2006 WL 473735, at *12 (D. Conn. Feb. 28, 2006) (even where hearing officer does not explicitly identify potential claim at the outset of hearing, claim may be exhausted through sufficient factual development during course of hearing).

Thus, although it is a close question, the Court concludes that plaintiffs have exhausted administrative remedies on the claim they now present to this Court. The Court next turns to the substance of plaintiffs' claim.

B. Plaintiffs' Claim for Reimbursement

Before the hearing officer, plaintiffs argued that the district failed to offer Drake a FAPE

for the entire 2008-09 school year. Before this Court, however, plaintiffs do not contest the hearing officer's conclusion that, as of Drake's enrollment in CLC in July 2008, the district had offered Drake a FAPE based on the IEP in place. (See Pls.' Reply at 5 ("The appropriateness of the IEP in July 2008 is not the issue before this Court, and has not been raised in Plaintiffs' appeal.") (emphasis in original).) Rather, plaintiffs fault the hearing officer only for failing to find that the district's plan became unsuitable as of January 2009, shortly after the family's house burned down and Drake's father passed away, because Drake could not transition back to public school during that time.

The district argues that, because the final IEP offered before Drake's parents withdrew him from public school constituted a FAPE, it cannot be held liable for tuition reimbursement. More specifically, the district contends that, absent some indication from Maria that she wished to re-enroll Drake in the public schools, the district was under no obligation to craft a new IEP for Drake mid-year to take into account his changed circumstances and his resulting inability to transition back to public school. The district is correct.

Where, as in this case, parents withdraw their child from public school without the consent of or a referral from the school district, the parents can only be reimbursed for their tuition if the district "had not made a free appropriate public education available to the child in a timely manner prior to . . . enrollment [in the private school]." 20 U.S.C. § 1412(a)(10)(C)(ii) (emphasis added); see also 34 C.F.R. § 300.148(c). Accordingly, in evaluating whether the district's offer constituted a FAPE, a court must examine the adequacy of the IEP "as of the time it is offered to the student, and not at some later date. . . . Neither the statute nor reason countenance 'Monday Morning Quarterbacking' in evaluating the appropriateness of a child's placement." Fuhrmann ex rel.

Fuhrmann v. E. Hanover Bd. of Educ., 993 F.2d 1031, 1040 (3d Cir. 1993); accord L.R. v. Manheim Twp. Sch. Dist., 540 F. Supp. 2d 603, 617 (E.D. Pa. 2008).

In this case, plaintiffs do not contest the hearing officer's decision that, as of July 2008, the district offered Drake a FAPE for the 2008-09 school year. As such, there is no basis under the IDEA or Section 504 for plaintiffs to collect reimbursement for Drake's tuition at CLC, and plaintiffs' motion must be denied.

It is plaintiffs' position that the district should have amended Drake's IEP in January 2009 to reflect his changed circumstances based on the unspeakable tragedies he suffered. Plaintiffs note that Drake's previous IEP expired in January 2009; thus, they assert, the district had a legal duty to update the IEP.

To support their argument, plaintiffs cite to sections of the IDEA and its implementing regulations that address the rights of students whom the school district places in private schools to carry out the district's special education responsibilities. See 20 U.S.C. § 1412(a)(10)(B); 34 C.F.R. § 300.325. Where a district makes such a referral, it does remain ultimately responsible to ensure that the child receives the needed services and that his IEP remains updated. 34 C.F.R. § 300.325(c). This rule sensibly reflects the notion that a district cannot avoid its obligation to offer a student a FAPE by outsourcing its responsibilities to a private provider.

The rule is inapplicable in this case, however, because Drake was not referred to CLC. Rather, his parents unilaterally withdrew him from public school and enrolled him at CLC, despite the district's offer of a FAPE. As such, absent an indication that Maria intended to re-enroll Drake in the district, the district had no responsibility to update Drake's IEP in the middle of the year.

Plaintiffs also contend that it would be unfair to place on Maria the responsibility to ask

the district to revise the IEP at a time of immense pain in her life. To support this position, plaintiffs cite to M.C. ex rel. J.C. v. Cent. Reg'l Sch. Dist., 81 F.3d 389, 397 (3d Cir. 1996), for the proposition that "a child's entitlement to special education should not depend upon the vigilance of the parents." M.C., however, addressed the extent of a district's liability for failure to offer one of its students a FAPE, even where the student's parents do not complain of inadequacies in his educational program. The M.C. court stated that "it is the responsibility of the child's teachers, therapists, and administrators – and of the multi-disciplinary team that annually evaluates the student's progress – to ascertain the child's educational needs, respond to deficiencies, and place him or her accordingly." Id. By contrast, in this case, Drake was no longer the district's student at the time in question. The logic of M.C. – that district personnel working with the child should be able to identify a child's needs even without parental complaints – is simply inapplicable.

In sum, Council Rock discharged its legal obligations to Drake when it offered him a FAPE prior to the 2008-09 school year. Accordingly, plaintiffs' Motion for Judgment on the Administrative Record is denied.

**V. CONCLUSION**

For the foregoing reasons, plaintiff's Motion for Judgment on the Administrative Record is denied. An appropriate order follows.